___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

JUN 2 7 2014

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J & J SPORTS PRODUCTIONS, INC.   \*
                                 \*
       Plaintiff                 \*
                                 \*
v.                               \*   Civil No. **PJM 13-3515**
                                 \*
SABOR LATINO RESTAURANT, INC.    \*
T/A SABOR LATINO RESTAURANT      \*
                                 \*
       Defendant                 \*

## MEMORANDUM OPINION

Plaintiff J&J Sports Productions, Inc. ("J&J Sports Productions") has sued Sabor Latino Restaurant, Inc., t/a Sabor Latino Restaurant ("Sabor") for violations of 47 U.S.C. § 553 (which proscribes theft from a cable network), 47 U.S.C. § 605 (which protects companies against theft of their proprietary communications), and the common law tort of conversion. Sabor was properly served and failed to plead or otherwise respond to the Complaint, and the Clerk of the Court has entered Default against Sabor. Following entry of default, J&J Sports Productions filed a Motion for Judgment by Default (Paper No. 8), seeking $151,500 in damages. For the reasons that follow, J&J Sports Productions' Motion for Judgment by Default will be **GRANTED**, but the Court rejects J&J Sports Productions' proposed damages and adjusts the awards accordingly.

I.

J&J Sports Productions distributes sports and entertainment programming. It purchased the distribution rights to *"Good v. Evil": Angel Cotto v. Antonio Margarito, WBA Super World Light Middleweight Championship Fight Program* ("Program"), broadcast on December 3, 2011. J&J Sports Productions entered sublicensing agreements with commercial entities throughout North America, granting limited public exhibition rights to those entities for the benefit and

entertainment of their patrons. The transmission of the Program was encrypted and made available only to J&J Sports Productions' customers. J&J Sports Productions alleges that Sabor violated both 47 U.S.C. §§ 553 and 605 by knowingly intercepting, receiving, and exhibiting the Program without authorization. In the Complaint and Motion for Judgment by Default, J&J Sports Productions seeks statutory damages of $100,000 for Sabor's violation of § 605, $50,000 for the violation of § 553, and $1,500 in compensatory damages for conversion. Sabor has not responded to any of J&J Sports Productions' filings.

## II.

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered and the complaint does not specify the amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Rule 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Nevertheless, default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). In determining whether to award default judgment, the court takes as true the well-pleaded factual allegations in the complaint as to liability, but not as to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

## III.

Although the Court finds that default judgment is proper, J&J Sports Productions cannot recover the full amount of damages it seeks. J&J Sports Productions has repeatedly filed motions seeking excessive damages in nearly identical cases, and the Court has consistently addressed the limitations on damages for the same causes of action brought here. *See, e.g., J & J Sports Prods., Inc. v. Melgar*, CIV. PJM 11-3339, 2012 WL 1852270 (D. Md. May 17, 2012); *J & J Sports Prods., Inc. v. Castro Corp.*, CIV.A. DKC 11-1599, 2012 WL 1883764 (D. Md. May 21, 2012); *J & J Sports Productions, Inc. v. Quattrocche*, Civil Action No. WMN–09–CV–3420, 2010 WL 2302353, at *1 (D. Md. June 7, 2010). It is troubling that J&J Sports Productions continues to proceed without regard to the many opinions written on this issue.

J&J Sports Productions seeks damages for both § 605 and § 553. "Generally, however, plaintiffs cannot recover under both statutes for the same conduct and courts allow for recovery under § 605 as it provides for the greater recovery." *Quattrocche*, 2010 WL 2302353, at *1 (citing *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469 (E.D.N.Y. 2009); *see also Castro Corp.*, 2012 WL 1883764. "Courts have similarly not allowed recovery for claims of conversion, as they would not exceed those under §§ 553 or 605 and would result in double-recovery." *Quattrocche*, 2010 WL 2302353, at *1 (citing *J & J Sports Productions, Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*, Civ. No. 2:09–03141, 2010 WL 1838432, at *2 (D.S.C. 2010)).

Accordingly, as this Court has repeatedly set forth, J&J Sports Productions may recover, at most, $110,000, consisting of $10,000 in statutory damages, the maximum allowable under § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages, the maximum allowable under § 605(e)(3)(C)(ii). *See Castro Corp.*, 2012 WL 1883764, at *3.

A.

Judge Nickerson has set forth the relevant considerations for the statutory damages analysis:

> Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising [ ] discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. *Joe Hand Promotions, Inc. v. Bougie, Inc.*, Civ. No. 109–00590, 2010 WL 1790973, at *5 (E.D. Va. April 12, 2010) (patrons present); *[Kingvision Pay–Per–View, Ltd. v.] Admiral's Anchor*, 172 F.Supp.2d [810,] 812 [S.D.W.Va. 2001] (maximum occupancy); *Entertainment by J & J, Inc. v. Gridiron, Inc.*, 232 F.Supp.2d 679, 681 (S.D.W.Va. 2001) (maximum occupancy). The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. *[J & J Sports Prods., Inc. v.] 291 Bar & Lounge*, 648 F.Supp.2d [469,] 474 [E.D.N.Y.2009]. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. *Id.* The other approach to calculating damages is to award a flat sum per violation.

*Quattrocche*, 2010 WL 2302353, at *2 (D. Md. June 7, 2010).

To support its argument that it is entitled to the maximum amount of statutory damages, J&J Sports Productions attaches the affidavit of a private investigator, Thomas Morris, who attended the broadcast at Sabor Latino Restaurant. He observed six televisions that displayed the broadcast. He noted that the maximum occupancy was 200, and there were approximately 154 patrons present. Patrons were not charged an entrance fee. J&J Sports Productions has also provided a "rate card" indicating that the cost to purchase the Program would have been $1,600 for an occupancy of 101-200 persons.

J&J Sports Productions has not provided any way to approximate the additional profits Sabor may have received as a result of the broadcast. Consistent with prior case law in this

District, the Court will accept the cost to purchase the Program as the direct loss to J&J Sports Productions, which will thus be awarded $1,600 in statutory damages.[1] *See, e.g., J & J Sports Prods., Inc. v. Greene*, CIV.A. 10-0105, 2010 WL 2696672 (D. Md. July 6, 2010).

### B.

The next inquiry is whether J&J Sports Productions is entitled to enhanced damages, and in what amount. Pursuant to § 605(e)(3)(C)(ii), where the court finds that a violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000." Courts look to several factors to determine whether enhanced damages are warranted: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks. *See, e.g., Quattrocche*, 2010 WL 2302353, at *2.

Rather than providing evidence of the foregoing factors, J&J Sports Productions simply asks for the maximum enhancement of $100,000. This amount is clearly excessive in relation to awards in similar cases. To be sure, Sabor committed the violation willfully and for purposes of commercial advantage or private gain, and therefore J&J Sports Productions is entitled to some enhanced damages. But there is no evidence of repeat violations, monetary gains, advertising of the broadcast, or the charging of an admission fee or premiums for food and drinks. J&J Sports Productions has therefore failed to support its request for the maximum enhancement.

Still, some enhanced damages are proper to deter potential future unlawful uses of communications. Where there are no allegations of repeat behavior or other factors suggesting

---

[1] It is unclear from the rate card whether the amount would have been $1600 or $2400, because the card includes different ways to calculate the rate. Given J&J Sports Productions' failure to explain this, statutory damages will be limited to $1,600.

egregious willfulness, courts generally award three to five times the statutory damages award in enhanced damages. *See, e.g., Melgar*, 2012 WL 1852270, at *4 (awarding three times the statutory damages in enhanced damages); *Quattrocche,* 2010 WL 2302353, at *3 (awarding five times the statutory damages). In *Quattrocche*, 2010 WL 2302353, at *3, where defendant charged an admission fee for the unlawful exhibition of a program, Judge Nickerson calculated enhanced damages by multiplying the minimum statutory damages by a factor of five. Where, as here, the evidence suggests that no admission fee was charged, Judges in this District have typically multiplied the statutory damages by a factor of three to determine enhanced damages. *See, e.g., Castro Corp.*, 2012 WL 1883764, at*4 (D. Md. May 21, 2012); *Greene*, 2010 WL 2696672. That is what the Court will do here. Because J&J Sports Productions has provided no evidence to suggest that the Court should apply a higher factor, the Court will multiply the statutory damages ($1,600) by a factor of three to determine enhanced damages.[2] J&J Sports Productions will be awarded enhanced damages under § 605(e)(3)(C)(ii) in the amount of $4,800. The total amount of damages will therefore be $6,400.

## IV.

For the foregoing reasons, J&J Sports Productions, Inc.'s Motion for Default Judgment will be **GRANTED** in the total amount of $6,400.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**June 27, 2014**

---

[2] The Court notes that a similar approach is followed in the antitrust context, where an injured party may bring suit for treble damages. *See* 15 U.S.C. § 15.